IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AALIYAH PATTERSON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 3:20-cv-00195 |
| | )   Magistrate Judge Frensley |
| WALMART, INC., | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter is before the Court upon a Motion for Summary Judgment filed by the Defendant, Walmart, Inc. (Docket No. 38). In support of this Motion, Defendant contemporaneously filed a Memorandum of Law in Support of Defendant's Motion for Summary Judgment (Docket No. 39), a Concise Statement of Material Facts as to Which Defendant Contends There is No Genuine Issue for Trial in Support of Defendant's Motion for Summary Judgment (Docket No. 40), and excerpts of a transcript of the deposition of Plaintiff Aaliyah Patterson (Docket No. 39-1).

Plaintiff filed a Response to Defendant's Motion to Summary Judgment (Docket No. 41), Responses to Defendant's Concise Statement of Material Facts (Docket No. 42), Genuine Issues of Material Fact (Docket No. 43), and excerpts of a transcript of depositions of Plaintiff, Jackie Carpenter ("Ms. Carpenter"), and Joshua Lee ("Mr. Lee") (Docket No. 41-1). Subsequently, Defendant filed a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Docket No. 44), and further excerpts of a transcript of depositions of Plaintiff (Docket No. 44-1), Ms. Carpenter (Docket No. 44-2), Jennifer Joyce ("Ms. Joyce")

1

(Docket No. 44-3), and Mr. Lee (Docket No. 44-4), and a Response to Plaintiff's Genuine Issues of Material Facts (Docket No. 45).

For the reasons discussed below, the undersigned finds that there are no genuine issues of material fact and that Defendant is entitled to summary judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment (Docket No. 38) is **GRANTED**.

## II. BACKGROUND

Plaintiff filed this premises liability action to recover for injuries that resulted from an alleged slip and fall accident in Defendant's store in Lebanon, Tennessee (Docket No. 41, p. 1). Plaintiff claims that she and her friend, Sierra Puck ("Ms. Puck"), were shopping at Defendant's store on December 13, 2018, when she slipped on an "unknown clear, somewhat sticky, liquid substance" (Docket No. 39, p. 1). She alleges that Defendant had constructive notice of the dangerous condition (Docket No. 41, p. 5). Plaintiff now seeks compensatory damages not exceeding $100,000 for past and future physical pain, emotional suffering and grief, and health care expenses, as well as loss of enjoyment of life, permanent impairment and partial disability, cost of this action, and all other general damages and other relief allowed under Tennessee state law to which she is entitled (Docket No. 1-2, p. 4-5).

## III. UNDISPUTED FACTS

On the evening of December 13, 2018, Plaintiff and Ms. Puck arrived at Defendant's store in Lebanon, Tennessee to purchase some green beans and other miscellaneous items (Docket No. 39, p. 2; Docket No. 41-1, p. 4). They walked down the seasonal aisle together, and after Ms. Puck had left the aisle, Plaintiff slipped on an "unknown clear, somewhat sticky, liquid substance" (Docket No. 41-1, p. 13) located on the floor at the end of the aisle (Docket No. 39-1, p. 6). Plaintiff did not have a shopping cart or basket with her at the time of the fall, and she

grabbed a shelf to try to brace herself (Docket No. 41-1, p. 4, 5). Plaintiff then used the shelf to help herself up, after which the only other shopper on the aisle asked if she needed any help (*Id.*).

Plaintiff did not see the substance on the floor prior to or after the fall. (Docket No. 41-1, p. 5). However, she saw her footprint on the ground and felt the substance on her clothes, which left "somewhat of a wet mark" on her bottom, leggings, and shoes (*Id.*). Plaintiff did not know how the substance ended up on the floor, how long it was on the floor prior to the incident, whether an employee or a customer put the substance on the floor, or whether an employee knew about the spill before the fall (*Id*. at 5-6). She also testified that Ms. Puck walked through the same area as the spill before she fell (Docket No. 44-1, p. 2)

After falling, Plaintiff claims that she "went straight to the front" of the store (Docket No. 41-1, p. 6). However, Assistant Protection Manager Ms. Carpenter testified that, based on the video surveillance, "[Plaintiff] had already done all her shopping [before she] got to self-check and told [a Walmart employee] that she wanted to talk to a manager" (Docket No. 44-2, p. 3). By the time Assistant Manager Mr. Lee was notified of the spill and went to check the area and take pictures, it seemed the substance had already been cleaned up: the lights were shining down on the floor and there was no stain or slide mark in the photos. (*Id.*) Ms. Carpenter does not know who cleaned up the substance and there were no cameras on the accident aisle (Docket No. 45, p. 3)

On the night of the incident, another customer fell a few aisles over; however, Plaintiff does not believe it was the same substance she slipped on "[b]ecause it was on the other aisle" (Docket No. 41-1, p. 6). Plaintiff believes that Defendant should have "[the] staff going around doing checks on every aisle to avoid [accidents]" (*Id.*). Mr. Lee testified that Walmart had a full-time maintenance crew that were always in the store and that there were protocols in place to

ensure the floors were free of debris and spills (Docket No. 44-4, p. 3). However, he was unsure about whether the store had a specific policy regarding how often employees were to check for spills (Docket No. 41-1, p. 18). Ms. Carpenter testified that Walmart had procedures in place, called "safety sweeps," requiring employees to look for spills every hour; however, she was not present the night of the incident and is unsure about whether employees abided by the procedure (Docket No. 41-1, p. 12).

At the time of the incident, Plaintiff was in "pretty good" health and had never taken prescription painkillers or pain medication aside from a surgery on her left shoulder (*Id.* at 3). After the accident, Plaintiff suffered a torn meniscus and labrum in her hip, both on the left side of her body (*Id.* at 3-4).

## IV.  LAW AND ANALYSIS

### A. Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In order to prevail on a motion for summary judgment, the moving party has the initial burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in light most favorable to the

nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 573, 587 (1986).

Fed R. Civ. P. 56 provides that the nonmoving party may not rest upon mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. However, if a nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-538 (6th Cir. 1999).

### B. Negligence

The parties agree that this action is governed by Tennessee law (Docket No. 39, p. 3; Docket No. 41, p. 2). In order to prevail on a claim of negligence, a plaintiff must allege: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant below the applicable standard of care such that it amounts to breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate cause. *Heflin v. Iberiabank Corp.*, 571 S.W.3d 727, 734 (Tenn. Ct. App. 2018). Tennessee state law provides the same basic elements for premises liability as it does for negligence. *See Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998).

#### i. Duty Generally

The question of duty is one of law in which the court must determine whether the plaintiff's interest was entitled to legal protection at the hands of the defendant. *Rice*, 979 S.W.2d at 308. In cases of premises liability, the premises owner has a duty to exercise

reasonable care under the circumstances to protect people lawfully on the premises from unreasonable risks of harm. *Basily v. Rain, Inc.*, 29 S.W.3d 879, 883 (Tenn. Ct. App. 2000); *Dobson v. State*, 23 S.W.3d 324, 330 (Tenn. Ct. App. 1999). However, courts have declined to impose a legal duty in situations where the condition was never discovered, nor would have been discovered through exercise of reasonable care, by the premises owner. *Rice*, 979 S.W.2d at 309. To hold the premises owner liable for the dangerous and defective condition,

> the plaintiff must prove each of the elements of negligence and either (1) that the condition was caused or created by the premises owner or their agent, or (2) if the condition was created by someone other than the owner or their agent, that the premises owner had actual or constructive notice of the dangerous or defective condition prior to the accident.

*Williams v. Linkscorp Tennessee Six, L.L.C.*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006) (citing *Blair v. West Town Mall*, 130 S.W.3d 761, 762 (Tenn. 2004)). Generally, notice can be established "by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence" *Blair*, 130 S.W.3d at 762. Plaintiff may also provide "proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition. *Id.* at 764 (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). When ascertaining whether a condition was discovered or would have been through exercise of reasonable care, "the mere existence of a defect or danger is generally insufficient to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it." *Rice*, 979 S.W.2d at 309 (citing *Prosser and Keeton on Torts*, *supra*, § 61 at 426-27).

C. **Case at Bar**

Defendant asserts that Plaintiff cannot establish a prima facie negligence claim under a creation, actual notice, or constructive notice theory of liability (Docket No. 38, p. 1, 5). Specifically, Defendant argues that there is no evidence that Walmart created the spill (Docket No. 39, p. 5), that Walmart had actual knowledge of the spill (*Id.* at 6), or that Walmart had constructive notice of the spill (*Id*. at 7). Further, Defendant states that there are no genuine issues of material fact (Docket No. 44, p. 6). Therefore, Defendant urges this Court to grant its Motion for Summary Judgment.

Plaintiff concedes that she cannot establish her claim under a creation or actual notice theory of liability, but nonetheless maintains that Defendant had constructive notice of the spill (Docket No. 41, p. 5). Furthermore, Plaintiff argues that there are genuine issues of material fact and, in light of evidence most favorable to Plaintiff, it cannot be said that a reasonable jury would not find that the substance was present long enough to constitute constructive notice (Docket No. 41, p. 7). Therefore, Plaintiff requests that the Court deny Defendant's Motion for Summary Judgment.

### i. Aaliyah Patterson's Negligence Claim

As a threshold matter, the question of whether a duty exists is a question of law. *Coln*, 966 S.W.2d at 44. Thus, it is appropriate for the Court to determine whether Defendant owed a duty to Plaintiff. If Defendant did not have a duty, it is entitled to judgment as a matter of law. *See id.* Here, Plaintiff's argument that summary judgment is inappropriate fails.

Plaintiff acknowledges that she cannot base her claim on theory of creation or actual notice, and instead bases the claim on a constructive notice theory (Docket No. 41, p. 5). When the only theory of liability is predicated on constructive notice, "the proof must show the dangerous or defective condition existed for such a length of time that the Defendant knew, or

7
Case 3:20-cv-00195   Document 46   Filed 05/30/23   Page 7 of 10 PageID #: 247

should have known, of its existence." *Ogle v. Winn-Dixie Greenville*, 919 S.W.2d 45, 47 (Tenn. Ct. App. 1995) (citing *Allison v. Blount National Bank*, 390 S.W.2d 716, 719 (Tenn. Crim. App. 1965)). For these cases to proceed, "[t]here must be some evidence of a material and substantial nature." *Id.* at 47 (citing *Sadek v. Nashville Recycling Co.*, 751 S.W.2d 428, 431 (Tenn. App. 1988)). Further, "when there is a complete absence of proof as to when and how the dangerous condition came about, it would be improper to permit the jury to speculate on these vital elements" *Id.* at 47. As noted earlier, Plaintiff did not know how the substance ended up on the floor (Docket No. 41-1, p. 5), nor did she know how long it was on the floor prior to the incident. In fact, Plaintiff even admitted that she did not know if the substance was on the floor just one minute prior to the fall (*Id.* at 6). Unable to prove these necessary elements, Plaintiff lacks evidence of "material and substantial nature" to show that Defendant had constructive notice of the spill. *Ogle*, 919 S.W.2d at 47.

Time, especially, is a crucial element for constructive notice. Without any proof that the substance was on the floor for such a length of time that Defendant should have known about its existence, the jury would have to determine these facts. *Blair*, 130 S.W.3d at 764. Consequently, this case would require the jury to speculate greatly about essential elements of constructive notice. In *Ogle*, the court found that this speculation is improper under Tennessee law. *Ogle*, 919 S.W.2d at 47. Just like the case at bar, the plaintiff in *Ogle* "testified that she did not know how the substance got there nor how long it had been there . . . There were no witnesses to the accident and no direct evidence that any employee of the appellee had any knowledge of a substance being on the floor." *Id*. at 47. Accordingly, the Tennessee Court of Appeals determined that the evidence presented was "totally insufficient to meet any of the requirements necessary to avoid a dismissal by summary judgment." *Id*. at 47. Likewise, it would be improper

for this Court to submit this case to a jury: there were no cameras on the aisle of the alleged incident, and Plaintiff lacks knowledge regarding how the substance ended up on the floor and how long it was on the floor. Plaintiff lacks the necessary proof that there is "some evidence of a material and substantial nature," thus demonstrating that "[t]here are simply no facts upon which a jury could find that the appellee had constructive notice of a dangerous condition on the appellee's premises." *Id.* at 47 (citations omitted). Therefore, this case stretches beyond the parameters allowed under governing law and cannot be admitted to a jury.

Plaintiff also cannot establish constructive notice by implying that Defendant might have known about the substance by having a specific time policy for safety sweeps (Docket No. 41, p. 6). The Court agrees with Defendant that this argument is inconsistent with Tennessee law: constructive notice liability is not what Defendant *could* have known, but rather what Defendant *should* have known. *See Ogle*, 919 S.W.2d at 47; *see also Allison*, 390 S.W.2d at 719; *Rice*, 979 S.W.2d at 308; *Simmons*, 713 S.W.2d at 641; *Blair*, 130 S.W.3d at 764. Moreover, Plaintiff's argument for a specific time policy suggests that Defendant would then have to prove how long the substance was on the floor based on the set time intervals. Again, this is inconsistent with Tennessee law: Plaintiff has the burden of proving when and how the substance ended up on the floor, and this burden cannot be evaded by suggesting a specific time policy for Walmart. *See Ogle*, 919 S.W.2d at 47.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to make a showing sufficient to establish the essential element of her case: that Defendant should have known about the spill based on when and how the substance got on the floor. Even if Plaintiff argued that there was a genuine issue of material fact based on when the accident was reported, the failure of proof regarding Defendant's constructive notice necessarily renders all

other facts immaterial. *Celotex*, 477 U.S. at 322-23. While the Court is sympathetic to the Plaintiff's injuries, the Court must follow the well-established law regarding constructive notice and the Plaintiff simply cannot meet the burden established by the law. Therefore, the Court must grant Defendant's Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiff has failed to establish that there is a genuine issue of material fact. Accordingly, Defendant's Motion for Summary Judgment (Docket No. 38) is **GRANTED,** and this action is **DISMISSED with prejudice**.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**